UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| TRACY IRENE KRONTZ, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CAUSE NO. 1:07-CV-00303 |
|  | ) |  |
| MICHAEL J. ASTRUE, | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Plaintiff Tracy Krontz, who is proceeding *pro se*, appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket # 1.) The appeal was referred to the undersigned Magistrate Judge on March 26, 2008, by District Judge Theresa Springmann for the issuance of a Report and Recommendation. (Docket # 12.)

Having reviewed the record and pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(d)(1), the undersigned Magistrate Judge recommends that the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation. This Report and Recommendation is based on the following facts and principles of law.

# I. PROCEDURAL HISTORY

Krontz applied for DIB and SSI in April 2004, alleging that she became disabled as of May 16, 2003.[1] (Tr. 18, 45-54, 304.) The Commissioner denied her application initially and upon reconsideration, and Krontz requested an administrative hearing. (Tr. 25-32, 39.) A hearing was conducted by Administrative Law Judge (ALJ) Frederick McGrath on March 21, 2006, at which Krontz, who was represented by counsel at the time, and a vocational expert testified. (Tr. 300-24.)

On October 27, 2006, the ALJ rendered an unfavorable decision to Krontz, concluding that she was not disabled because she could perform a significant number of jobs in the national economy despite the limitations caused by her impairments. (Tr. 18-24.) The Appeals Council denied Krontz's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-14.) Krontz filed a complaint with this Court on November 29, 2007, seeking relief from the Commissioner's final decision. (Docket # 1.)

# II. FACTUAL BACKGROUND[2]

## *A. Background*

At the time of the ALJ's decision, Krontz was thirty-four years old; had a high school education; and possessed work experience as a factory press operator, nurses's aid, and short order cook. (Tr. 24, 41, 60, 69-84, 305, 307-10, 318-20.) Krontz alleges disability due to a number of complaints, including back pain, left arm dysfunction, depression, and fibromyalgia.

---

[1] This is Krontz's second application for disability benefits, as she first applied for benefits in May 2003 but was denied. (Tr. 304; Reply Br. 1-2.)

[2] In the interest of brevity, this Report and Recommendation recounts only the portions of the 324-page administrative record necessary to the decision.

(Tr. 21, 59, 63, 304, 310, 313, 315; Reply Br. 5.)

At the hearing, Krontz testified that she lives with her husband, who works the day shift, and two children, ages thirteen and fourteen. (Tr. 305.) She stated that her children help her with household chores after school as she cannot do the laundry, mop, or sweep; her husband does the grocery shopping. (Tr. 316.) She stated that she has a driver's license but limits her driving to short errands "once or twice a week" because she often experiences drowsiness from her medications; she stated that she does not attend her children's sports activities because of her difficulty with sitting and that reading is her only hobby. (Tr. 306-07, 317-18.)

When asked to describe her pain, Krontz stated that she experiences "constant pain" in the lower and middle part of her back, right knee, left hip, and at times in her shoulders. (Tr. 310.) She stated that the pain was "between a nine and ten" on a scale of one-to-ten, with "one" equating to a hangnail and "ten" as so severe that she would scream out. (Tr. 310-11.) She further reported that medication does not "get rid[]" of her pain, but that it does "ease some" when she lies down. (Tr. 311.) Krontz added that her pain is aggravated by standing or sitting for "periods of time," stating that she could be on her feet for a maximum of twenty minutes but that she can sit for only ten minutes. (Tr. 311-12.) She further reported that she can walk for "[m]aybe about half a block," confiding that she uses a cane or wheelchair for longer distances. (Tr. 312.) Krontz also testified that her left arm "tingles"and that it gets "sore." (Tr. 313.) She elaborated that she "can barely lift a milk jug" and that it is "hard to carry anything over five pounds." (Tr. 313.)

Krontz further testified that on a typical day she lies down for thirty minutes to an hour every two hours. (Tr. 314.) She stated that she has been to physical therapy but that it "doesn't

3

help." (Tr. 314.) She explained that she takes Vicodin and Naproxen for her physical pain and that she also takes medication for depression. (Tr. 315.) Krontz elaborated that she has great difficulty sleeping in that she wakes every one to two hours "in constant pain"; she states that at best she sleeps between four and six hours in a twenty-four hour period. (Tr. 316.)

*B. Summary of the Relevant Medical Evidence*

Krontz suffered pelvic and right lower leg injuries in a car accident in 1989.[3] (Tr. 131.)

Krontz sought care from Dr. Reed Taylor, a family practitioner, on January 8, 2003. (Tr. 134.) He referred her to Dr. Ann Laidlaw for further evaluation.[4] (Tr. 131.)

Dr. Laidlaw evaluated Krontz on February 24, 2003, for left hip pain that radiated to the thoracic spine, pain in both knees, and intermittent numbness and tingling of her right foot. (Tr. 131-33.) She diagnosed her with sacroiliac joint dysfunction with muscle imbalance, continued her prescription for Vioxx, and referred her to physical therapy. (Tr. 132.) Krontz saw Dr. Laidlaw again in September 2003, and Dr. Laidlaw added L5 spondylosis to her prior diagnosis. (Tr. 125-30.)

In November 2003, Krontz was evaluated by a physical therapist, who opined that Krontz's signs and symptoms were consistent with potential low back pain of a mechanical nature. (Tr. 144-45.) The therapist also documented that Krontz demonstrated "several potential yellow flags in regard to her behaviors and behavior to pain" and that she gave some conflicting reports regarding her symptoms. (Tr. 145.) The therapist recommended that Krontz return two times a week for six weeks for an exercise and manual therapy program. (Tr. 145.) Krontz

---

[3] Krontz reports that she also fractured her arm in the accident (Reply Br. 6), though this injury is not specifically mentioned in the medical records.

[4] The record does not reveal Dr. Laidlaw's specialty. (*See* Tr. 117-33.)

4

attended approximately three appointments but was eventually terminated due to noncompliance with her scheduled appointments. (Tr. 150, 152.)

Krontz returned to Dr. Laidlaw in January 2004, and she underwent an MRI, the results of which showed bilateral L5 spondylosis with subtle spondylolisthesis and other lumbar changes. (Tr. 103, 125-27.) In April 2004, after examining the results of the MRI, Dr. Laidlaw added a diagnosis of mild low lumbar facet arthropathy to her prior diagnoses. (Tr. 123-24.) She discussed with Krontz the possibility of a steroid injection and encouraged her to resume physical therapy. (Tr. 124.)

On June 1, 2004, Dr. Saadat Abbasi, a state agency physician, reviewed Krontz's record. (Tr. 105-12.) He opined that she could frequently lift twenty pounds and occasionally lift ten pounds; stand or walk six hours and sit six hours in an eight-hour workday; perform unlimited pushing or pulling; and occasionally climb, balance, stoop, kneel, crouch, or crawl. (Tr. 106-07.) He assigned no environmental limitations. (Tr. 109-10.)

Krontz returned to Dr. Laidlaw in August 2004. (Tr. 120-22.) Dr. Laidlaw affirmed her prior diagnoses but noted in addition that Krontz met 16 of 18 tender points for fibromyalgia and that there was "significant functional overlay," observing that her symptoms were not well defined. (Tr. 12-22.) She ordered additional testing concerning fibromyalgia, discussed the possibility of referring Krontz to a rheumatologist, and again referred her to physical therapy. (Tr. 121.)

Krontz attended twelve sessions of physical therapy between September and November 2004. (Tr. 160.) She was ultimately terminated due to noncompliance with her appointments. (Tr. 160.)

5

On December 15, 2004, Dr. Taylor completed a "Multiple Impairment Questionnaire" on Krontz's behalf, reflecting that Krontz was "unable to work." (Tr. 134-41.) More specifically, Dr. Taylor stated that since January 2003 he saw Krontz "when needed" and that he had last seen her in October 2004; he also explained that he sent her to Dr. Laidlow for further diagnostic tests. (Tr. 134-35.) He assigned her several diagnoses, including degenerative disc disease and fibromyalgia of the neck and shoulder; he also reflected that she had "nerve damage" and carpel tunnel syndrom in her left arm. (Tr. 134, 137.)

Dr. Taylor further opined in the Questionnaire that in an eight-hour workday Krontz could sit for no more than one hour and stand or walk for no more than one hour. (Tr. 136.) He reported that Krontz could lift no more than five pounds occasionally; never carry any weight; and that she had marked deficits with grasping and twisting objects and reaching, and moderate deficits with fine finger manipulation. (Tr. 137-38.) Dr. Taylor further opined that Krontz would need to take thirty-minute rest breaks every thirty minutes and that she would miss work more than three times a month. (Tr. 139-40.) He stated that she needs to avoid certain environmental conditions (such as fumes, humidity, and temperature extremes) and that she cannot push, pull, kneel, bend, stoop, or work at heights. (Tr. 140.)

On May 18, 2006, Krontz underwent an MRI of her right knee, the results of which showed no evidence of a meniscal tear but did show a small focal of chondromalacia and a small fissure within the medial patellar cartilage. (Tr. 199.)

## IV. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

6

[Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## V. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[5] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The ALJ's Decision

On October 27, 2006, the ALJ rendered his decision. (Tr. 18-24.) He found at step one of the five-step analysis that Krontz had not engaged in substantial gainful activity since her alleged onset date, and at step two that her "bilateral L5 spondylosis, mild degenerative disc disease, and most likely fibromyalgia of her neck and shoulders" were severe impairments. (Tr. 21.) At step three, the ALJ determined that Krontz's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 22.) Before proceeding to step four, the ALJ determined that Krontz's testimony of debilitating limitations was "not entirely credible" and that she had

---

[5] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

8

the following RFC:

> [T]he claimant has the residual functional capacity to perform light work not requiring climbing ladders, ropes or scaffolds; the employee can be around other employees and the public throughout the workday but only occasionally (less than one-third of the work day) with conversational and interpersonal interactions.

(Tr. 22.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that Krontz could perform her past relevant work as a cook and press operator. (Tr. 23.) In addition, the ALJ concluded at step five that Krontz could perform a significant number of other jobs within the economy. (Tr. 23.) Therefore, Krontz's claim for DIB and SSI was denied. (Tr. 23-24.)

*C. The ALJ's Credibility Determination Should Be Remanded*

In advocating her appeal, Krontz contends, among other things, that the ALJ failed to adequately explain his reasoning for discounting her credibility. (Opening Br. 3; Reply Br. 10; Tr. 202-03.) Ultimately, Krontz's challenge to the ALJ's credibility analysis has merit.

"Credibility determinations are the second step in a two-step process prescribed by the regulations for evaluating a claimant's request for disability benefits based on pain." *Aidinovski v. Apfel*, 27 F. Supp. 2d 1097, 1103 (N.D. Ill. 1998); *see* 20 C.F.R. §§ 404.1529, 416.929; *Behymer v. Apfel*, 45 F. Supp. 2d 654, 662 (N.D. Ind. 1999); SSR 96-7p. First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment (that is, an impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques) that could reasonably be expected to produce the claimant's pain or other symptoms. 20 C.F.R. §§ 404.1529, 416.929; *Williams v. Chater*, 915 F. Supp. 954, 964 (N.D. Ind. 1996); SSR 96-7p. If the record does not allow the ALJ to make such a finding, then that ends the inquiry, for a finding of disability cannot be made solely on the basis of the claimant's

9

symptoms, even if they appear genuine. SSR 96-7p.

If, however, the medical evidence shows the existence of an underlying impairment that could be reasonably expected to produce the claimant's symptoms, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 96-7p; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994); *Williams*, 915 F. Supp. at 964. "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96-7p.

Because the ALJ is in the best position to evaluate the credibility of a witness, his determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006), his determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435; *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness . . . .").

Here, in reaching his credibility determination, the ALJ stated:

> The claimant contends she has constant pain affecting her arms, shoulders, back, hands, hips, knees, and ankles. However, there is no objective medical evidence of record to verify her complaints such that she could not perform the range of light exertional work noted above. After considering the evidence of record, the

> undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 22-23.) Thus, at step one the ALJ concluded that Krontz has an underlying medically determinable physical impairment that could reasonably be expected to produce her pain or other symptoms.[6] Then, at step two, relying solely upon a lack of "objective medical evidence of record," the ALJ concluded that Krontz's complaints were not entirely credible. (Tr. 23.)

However, at step two during the credibility determination process, the ALJ may not reject a claimant's statements concerning her symptoms solely on the ground that they are not substantiated by objective medical evidence. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994); *Medina v. Shalala*, No. 92 C 8149, 1993 WL 498206, at *9 (N.D. Ill. Nov. 30, 1993) (stating that "objective medical evidence is a 'useful indicator' of determining pain levels but . . . rejection of testimony concerning pain cannot be based *solely* on a lack of objective medical evidence"). Rather, the ALJ must consider, in addition to the objective medical evidence, the entire case record to determine whether the

---

[6] Perhaps, with respect to some of Krontz's complaints, the ALJ instead meant to conclude at step one that Krontz did *no*t have a medically determinable impairment that could reasonably be expected to produce her alleged symptoms, relieving him of any duty to proceed to a step two credibility analysis and discussion of the entire case record. In fact, that is what the ALJ stated earlier in his decision with respect to Krontz's complaints of knee pain. (*See* Tr. 22 ("The claimant has multiple complaints of knee pain and her knees giving out, but . . . there is no objective medical documentation to show claimant has a medically determinable condition, which accounts for her complaints.").) Nonetheless, the ALJ stated when discussing the credibility of Krontz's complaints of "constant pain affecting her arms, shoulders, back, hands, hips, knees, and ankles," that Krontz's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. 23.) Consequently, we are faced with an internal inconsistency in the ALJ's decision and will not speculate as to the ALJ's ultimate reasoning. *See Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1059 (E.D. Wis. 2005) ("[P]rinciples of administrative law require the ALJ to rationally articulate the grounds for [his] decision and confine [judicial] review to the reasons supplied by the ALJ. (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)); *Hemphill v. Barnhart*, No. 01 C 6556, 2002 WL 1613721, at *8 (N.D. Ill. July 18, 2002) ("[N]o court should be forced to engage in speculation as to the reasons for an ALJ's decision." (citation omitted)).

claimant's statements are credible. *Luna*, 22 F.3d at 691. "Factors that must be considered include the nature and intensity of claimant's pain, precipitati[ng] and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. *Id*.; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Medina*, 1993 WL 498206, at *9.

Here, there is no indication that the ALJ considered the entire case record at step two during the credibility determination process. For example, the ALJ never discussed Krontz's daily living activities in connection with his credibility analysis; in fact, he never mentioned her daily activities at all in his entire decision. Likewise, the ALJ never mentioned in his decision, much less in the context of his credibility analysis, the effectiveness and side effects of the medication that Krontz takes for pain or the measures that she uses to relieve her pain. While the ALJ did mention that Krontz participated in physical therapy but had been terminated for noncompliance (Tr. 23), he did so elsewhere in his decision, not necessarily "connecting the dots" between this evidence and his credibility determination. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (stating that the ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight" (quoting SSR 96-7p)); *see generally Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (remanding case where the ALJ did not "sufficiently connect[] the dots" between the evidence of record and his RFC finding).

Furthermore, the ALJ's heavy reliance upon the lack of objective medical evidence when

discounting a claimant's credibility is particularly troubling when, like here, the claimant asserts disability due to fibromyalgia. Courts have observed:

> Fibromyalgia is a mysterious disease; doctors know very little about what causes it or how to treat it. There are no objective medical tests that can confirm the existence of fibromyalgia. Rather, the principal symptoms, which include persistent pain, fatigue, disrupted sleep, stiffness, and numerous tenders spots on the body, are all subjective.

*Allen v. Massanari*, No. 01 C 1045, 2002 WL 398510, at *9 (N.D. Ill. Mar. 14, 2002) (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)); *see Kurth v. Astrue*, 568 F. Supp. 2d 1020, 1032-33 (W.D. Wis. 2008) (stating that "subjective complaints in [a fibromyalgia] case are more important than in other cases because they are clinical indicators of the disease of fibromyalgia"); *Gister v. Massanari*, 189 F. Supp. 2d 930, 936-37 (E.D. Wis. 2001) (remanding credibility determination where the ALJ's discussion of the SSR 96-7p factors was flawed with respect to a claimant asserting disability based on fibromyalgia); *Aidinovski*, 27 F. Supp. 2d at 1103 (remanding credibility determination where there was no indication that the ALJ considered "the particularly subjective nature of fibromyalgia symptoms and their role in assessing [the claimant's] credibility").[7]

In short, because the ALJ failed to adequately consider the entire case record in accordance with SSR 96-7p when making his credibility determination, the ALJ did not build an accurate and logical bridge between the evidence of record and his conclusion. Therefore, the

---

[7] Of course, "it is not enough for a claimant to have fibromyalgia-one must demonstrate that the disease's symptoms are disabling . . . ." *Culver v. Astrue*, No. 07-C-643, 2008 WL 4103875, at *2 (E.D. Wis. Aug. 29, 2008) (affirming credibility determination of a claimant claiming disability due to fibromyalgia where the ALJ discounted her credibility because the claimant drove a school bus part time, failed to see her doctors consistently, and had no difficulty sitting during a forty-five minute hearing). The ALJ's task is not to determine whether a claimant has fibromyalgia, but is "to evaluate her claimed symptoms (e.g., extent of pain and movement limitations) in light of the medical evidence and her testimony in order to determine how disabling that condition actually is." *Id*. ("Obviously, if a claimant says she has crippling fibromyalgia but runs a marathon twice a week, the ALJ need not turn a blind eye to the objective facts.").

ALJ's credibility determination should be remanded.

*D. The ALJ's Consideration of the Medical Source Opinions of Record Also Contains Error*

Krontz also asserts that the ALJ erred by failing to give proper deference to the opinion of Dr. Taylor, her treating family practitioner. (Opening Br. 3; Reply Br. 10; Tr. 200-02.) While Krontz's argument is not necessarily convincing on this point, it does reveal that the ALJ erred in another respect when considering the medical source opinions of record.

To explain, in his decision the ALJ discussed Dr. Taylor's opinion. (Tr. 21, 23.) The ALJ then observed that Dr. Taylor's treatment notes provided "very little in the way of objective medical evidence or tests" and "mainly consist[] of the claimant's various complaints and some prescribed medications" (Tr. 21); he also noted that Dr. Taylor's opinion contained inconsistencies (Tr. 23). Consequently, the ALJ ultimately chose not to assign Dr. Taylor's opinion controlling weight. (Tr. 23.)

However, in doing so, the ALJ failed to explain what medical source opinion he *did* rely on in determining Krontz's RFC. Presumably, he relied on the opinion of Dr. Abbasi, the state agency physician. However, the ALJ *never mentioned, much less discussed*, Dr. Abbasi's opinion in his decision. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (opining that when probative evidence is left unmentioned by the ALJ, the court is left to wonder whether it was even evaluated). The Commissioner must "evaluate every medical opinion [it] receive[s]." 20 C.F.R. §§ 404.1527(d), 416.927(d). Each medical opinion, other than a treating physician's opinion entitled to controlling weight, must be evaluated pursuant to the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) to determine the proper weight to apply to it. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-2p; *see generally White v.*

14

*Barnhart*, 415 F.3d 654, 658-60 (7th Cir. 2005); *Windus v. Barnhart*, 345 F. Supp. 2d 928, 939-43 (E.D. Wis. 2004).

Therefore, because the ALJ's decision causes the Court to speculate as to the ALJ's reasoning, *see Blom*, 363 F. Supp. 2d at 1059; *Hemphill*, 2002 WL 1613721, at *8, the decision should be remanded so that the ALJ can properly evaluate the medical source opinions of record in accordance with 20 C.F.R. §§ 404.1527(d) and 416.927(d) and minimally articulate his analysis of such evidence.[8]

---

[8] While Krontz requests an award of benefits rather than a remand of her case for rehearing (Reply Br. 13-14), her request is unavailing, as the record does not "compel[] an award of benefits" in this instance. *Brisco ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) ("An award of benefits is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." (internal quotation marks and citation omitted)).

Despite her request for an outright award of benefits, Krontz spent most of her briefs arguing that the Court should remand this matter to the Commissioner, apparently pursuant to the sixth sentence of 42 U.S.C. § 405(g), for consideration of medical records from Dr. Nelson and a Dr. Schrock, who began to treat her after Dr. Taylor and Dr. Laidlaw when she moved to Indiana. (*See* Opening Br. 3-6; Tr. 204.) This argument, however, is unpersuasive.

The sixth sentence of 42 U.S.C. § 405(g) permits a remand "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." For sixth sentence purposes, "'materiality' means that there is a 'reasonable probability' that the Commissioner would have reached a different conclusion had the evidence been considered, and 'new' means evidence not in existence or available to the claimant at the time of the administrative proceeding." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997); *see also Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993).

Here, Krontz fails to establish that Dr. Nelson's records dated April through October 2006 are material. (*See* Tr. 292-99.) The records (which her attorney submitted to the Appeals Council on February 22, 2007 (Tr. 204), that is, *after* the ALJ had rendered his decision) for the most part merely reflect Dr. Nelson's concern that Krontz may have had a medial meniscus tear on her right knee; however, an MRI in May 2006 proved otherwise. (Tr. 199, 292-99). Therefore, there is not a reasonable probability that the Commissioner would have reached a different conclusion had Dr. Nelson's records been considered.

As to the records of Dr. Schrock, the ALJ held the record open after the hearing so that Krontz's attorney could submit the records, yet he failed to do so. (Tr. 303.) Thus, Krontz fails to establish good cause why the evidence was not produced during the pendency of the administrative proceedings. Moreover, Krontz still has not produced the records in connection with this appeal or explain why she thinks there is a reasonable probability that the Commissioner would have reached a different conclusion had Dr. Schrock's records been considered. As a result, Krontz has also failed to show that Dr. Schrock's records are material.

In short, Krontz's request for a sixth sentence remand does not require attention upon remand.

## VI. CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge recommends that the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to Krontz and to counsel for the Commissioner. NOTICE IS HEREBY GIVEN that within ten days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.

SO ORDERED.

Enter for this 24th day of November, 2008.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge